This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41340**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VERNON LONG,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Louis E. DePauli, Jr., District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** This matter was submitted to this Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief and answer brief, we affirm for the following reasons.

**{2}** On appeal, Defendant challenges the district court's denial of his motion to enforce the plea agreement entered into between himself and the State. [BIC 1] Defendant argues that because he substantially complied with the plea agreement, he is entitled to specific performance. [BIC 1] Because Defendant is not challenging the district court's findings of fact, "[w]e review de novo the district court's application of law to the facts." *State v. Ornelas*, 2024-NMCA-064, ¶ 23, 554 P.3d 728.

**{3}** In the present case, Defendant was charged with aggravated driving while under the influence of liquor or drugs (DWI) as a fifth offense, contrary to NMSA 1978, Section 66-8-102(C) (2016), among other charges. [1 RP 79-80] The day before the trial was set to begin, the State proposed a plea agreement where Defendant would plead guilty to the lesser charge of aggravated DWI as a third offense and the other charges would be dropped. [1 RP 223] The prosecutor filed a mutual motion to vacate the jury trial alerting the district court that "[D]efendant agreed to accept a plea from the State" and requested that the district court schedule a change of plea hearing. [1 RP 157] The first hearing was set for September 9, 2019, but Defendant failed to appear. [BIC 2; 1 RP 159] A second hearing was scheduled a week later on September 16, 2019, where Defendant again failed to appear and a bench warrant for his arrest was issued. [BIC 2; 1 RP 162] On October 3, 2019, Defendant checked into, and subsequently completed, a ninety-day inpatient alcohol treatment program, which he believed was a requirement of the plea agreement. [BIC 3, 6; AB 2; 1 RP 226-27]

**{4}** The arrest warrant was executed over two years later when Defendant turned himself in. [BIC 4] At Defendant's arraignment, the State indicated that the plea offer from August 12, 2019 "was now void due to his failure to appear at the [two] hearings." [1 RP 206, ¶ 14] Defendant filed a motion to enforce the plea, and argued that based on contract law, he was entitled to specific performance because he had participated in the alcohol treatment program pursuant to the plea agreement. [1 RP 204-10] The district court denied Defendant's motion to enforce the plea finding that (1) "[t]he plea agreement signed by the prosecutor constituting the offer in this case is silent on the alleged condition [that Defendant complete an inpatient rehabilitation program]"; (2) the offer "could only be accepted by performance," "[t]he performance being . . . Defendant pleading guilty," and that "[h]e failed to appear for both hearings"; (3) the offer "did not allow . . . Defendant to accept by performance by completing an inpatient program before pleading guilty" and as such, he "suffered no detrimental reliance" by entering a program; and (4) because of his failure to appear at both hearings, "it was reasonable for the State to revoke any plea offer made prior to the bench warrant issued against . . . Defendant." [1 RP 247-48] The district concluded that "no contract was created requiring specific performance allowing Defendant to plea guilty to lesser charges." [2 RP 248] Defendant's case eventually went to trial, and he was convicted of an aggravated DWI as a fifth offense. [2 RP 369-70]

**{5}** "Plea bargaining has two aspects: the entering into an agreement and its acceptance by the court." *Ornelas*, 2024-NMCA-064, ¶ 25 (internal quotation marks and citation omitted). "Generally, a plea bargain is viewed in contract terms as an offer until the defendant enters a court-approved guilty plea. By analogy to contract law, a

defendant is viewed as accepting the offer by pleading guilty." *Id.* (internal quotation marks and citations omitted). "Because a plea bargain is viewed as an offer, and not a contract between the state and the defendant, courts have generally concluded that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court." *Id.* (internal quotation marks and citation omitted); *see also State v. Mares*, 1994-NMSC-123, ¶ 12, 119 N.M. 48, 888 P.2d 930 ("A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the trial court."). "Consistent with these principles, our Supreme Court has cautioned that neither party should rely on a plea bargain not specifically approved by the trial court." *Ornelas*, 2024-NMCA-064, ¶ 25 (alteration, internal quotation marks, and citation omitted).

**{6}** Defendant argues that the district court erred when it denied his motion to enforce the plea agreement. He argues that he detrimentally relied on the plea agreement by attending the ninety-day alcohol treatment program, and is now entitled to specific performance in the form of a prosecution for a DWI as a third offense. [BIC 5-10] Because Defendant only argues that he detrimentally relied on the plea agreement, we limit our analysis accordingly. *See id.* ¶ 27 (explaining that this Court has recognized two exceptions for when a prosecutor can withdraw a plea before it is accepted: "when the prosecutor withdraws a plea agreement seeking to deceive or take unfair advantage of a defendant, or the defendant has detrimentally relied on the plea agreement").

**{7}** In response, the State argues that Defendant has not met his burden demonstrating that the district court erred by denying him specific performance. Specifically, the State asserts that there is no evidence in the record proper to support that Defendant's claim that his participation and completion of a ninety-day treatment program was ever a part of the plea agreement. [AB 5-7] Based on our review of the record proper, we agree with the State.

**{8}** In *Ornelas*, this Court considered when a defendant can enforce a plea agreement that has not yet been accepted by the district court. *Id.* ¶ 1. There, the defendant was charged with aggravated DWI (ninth offense), and agreed to plead guilty to aggravated DWI (seventh offense). *Id.* ¶¶ 2, 4. The parties notified the district court that they had reached a plea agreement, requested that the trial be vacated, and the matter be set for a plea hearing. *Id.* ¶ 5. Shortly thereafter, however, the State withdrew its plea offer. *Id.* ¶ 6. Defendant filed a motion to enforce the plea agreement arguing that he had detrimentally relied on the State's offer by giving up his trial date and as such, he would remain in pretrial detention. *Id.* ¶ 7. The district court granted the defendant's motion, reasoning, in part, that (1) the trial was vacated because the defendant had accepted the plea offer; (2) it was difficult to reset trial due to the COVID-19 pandemic; and (3) it would be a two to three month delay before the case could proceed to trial. *Id.* ¶ 9. On appeal, this Court considered what the detrimental reliance standard is, and how it should be applied. *Id.* ¶¶ 29-30. Noting that there was no New Mexico precedent applying this standard, this Court considered the decisions of other state courts. *Id.* ¶¶ 32-36. It determined that there was detrimental reliance where

defendant "agreed to take a substantial step detrimental to their interest in return for the state's promise of a particular plea." *Id.* ¶ 36. In particular, the Court explained that

> [r]ather than focusing on the prejudice to the defendant, [the other state courts] focused primarily on the defendant's fulfillment of some part of a bargained-for exchange with the prosecution that went beyond the mere agreement by the defendant to plead guilty. Where, in contrast, a plea did not demand any action by the defendant other than pleading guilty, courts have held that the plea was not enforceable until the defendant's guilty plea was accepted by the district court.

*Id.* Applying this reasoning to the facts, this Court determined that the district court had erred when it enforced the plea agreement because the defendant did not detrimentally rely on it. *Id.* ¶ 38. This Court explained that there was no evidence that the defendant had agreed to take some significant action to his detriment in reliance on the agreement. *Id.* Rather, the defendant accepted a routine plea bargain "in the nature of an offer by the prosecution, intended to be accepted and to become binding and enforceable only when the district court approved the plea." *Id.*

**{9}** We believe that the case before us is analogous to *Ornelas*. Although Defendant asserts that his completion of a ninety-day treatment program was a term of the plea agreement, the record proper does not reflect this. Defendant acknowledges that that term was not in the written plea agreement itself. [BIC 6; 1 RP 223] *See* Rule 5-304(B) NMRA (stating that "[i]f a plea agreement has been reached by the parties which contemplates entry of a plea of guilty or no contest it shall be reduced to writing"). There is no indication in the record proper that a term of the plea agreement was for Defendant to participate and complete a treatment program. Defendant asserts that "the trial court judge never ruled that he disbelieved the defense counsel's statement that it was part of the agreement." We note, however, that the argument of counsel is not evidence, *see State v. Cordova*, 2014-NMCA-081, ¶ 14, 331 P.3d 980, and that the absence of a finding of fact on this issue does not establish that the treatment program was a requirement of the plea agreement. *See State v. Eckard*, 2012-NMCA-067, ¶ 10, 281 P.3d 1248 (stating that "given the absence of any findings of fact or conclusions of law, we draw all inferences and indulge all presumptions in favor of the district court's ruling" (internal quotation marks and citation omitted)).

**{10}** Here, as in *Ornelas*, there is no evidence in the record proper to support Defendant's claims that he fulfilled "some part of a bargained-for exchange with the prosecution that went beyond the mere agreement by the defendant to plead guilty." *Ornelas*, 2024-NMCA-064, ¶ 36. Because the evidence shows that the plea agreement only required Defendant to plead guilty, and because the district court had not yet accepted it, we conclude that the district court did not err when it denied Defendant's motion to enforce the plea. *See id.* ¶¶ 36, 38; *State v. Bourland*, 1993-NMCA-117, ¶ 4, 116 N.M. 349, 862 P.2d 457 (explaining that "because plea bargains involve the integrity of the criminal justice system and thus involve a third party (the court), neither

the government nor the defendant should rely on the bargain until the court has approved it").

**{11}** Defendant also argues that if he does not qualify for specific performance of the plea agreement, then he should be awarded quantum meruit in the form of a ninety-day presentence confinement credit in recognition of the time he spent in the treatment program. [BIC 11] Defendant, however, has not demonstrated that he preserved this issue or that he is entitled to this type of remedy. He has not cited to any authority to show that he can receive presentence confinement credit because he completed a ninety-day treatment program in reliance on a requirement he believed to be part of his plea agreement. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). Defendant identifies the application of the doctrine of quantum meruit in the context of plea agreements presents an issue of first impression in New Mexico, he does not explain why we should conclude that the doctrine does apply in this context. Accordingly, we will not grant Defendant's requested relief.

**{12}** For the foregoing reasons, we affirm the district court's denial of Defendant's motion to enforce the plea agreement.

**{13} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**